| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK | **NOT FOR PUBLICATION** |

-------------------------------------------------------X

In re:

NOBLE DREW ALI HOUSING CORP.,                    Chapter 11
                                                  Case No. 05-11915 (JMP)
        Debtor.

-------------------------------------------------------X

# MEMORANDUM DECISION AND ORDER
# EXPUNGING PORTION OF CLAIM 16

APPEARANCES:

SILVERMAN PERLSTEIN & ACAMPORA LLP
Counsel for Debtor
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753

        Edward M. Flint, Esq.
        Sarah A. Joos, Esq.

DAVID SANDERS
250 Lott Avenue #5C
Brooklyn, New York 11212

        Appearing *pro se*

JAMES M. PECK
United States Bankruptcy Judge

        The debtor, Noble Drew Ali Housing Corp. (the "Debtor"), filed its First Omnibus Claims Objection on August 10, 2006 (the "Objection"). Among other things, the Objection sought an order pursuant to 11 U.S.C. §502 and Federal Rule of Bankruptcy Procedure 3007 expunging a portion of proof of claim number 16 in the amount of $469,195 (the "Claim") filed by David Sanders ("Mr. Sanders") that is based upon contract and/or quasi-contract theories. The Court finds that no implied-in-fact or

implied-in-law contract exists between the Debtor and Mr. Sanders, that the Objection should be granted and that the breach of contract portion of the Claim should be expunged.

## Factual Background

On March 25, 2005, the Debtor, a New York not-for-profit corporation, filed a voluntary petition under chapter 11 of Title 11 of the United States Code, as amended (the "Bankruptcy Code"). From 1996 until the closing of a sale of substantially all of its assets on June 20, 2007, the Debtor owned real property improved by five apartment buildings, having a total of 385 apartments, located at 230, 240 and 250 Lott Avenue and 23-25 and 37 New Lots Avenue, Brooklyn, New York (collectively, the "Real Property"). The Real Property was sold pursuant to 11 U.S.C. §363 in furtherance of a chapter 11 plan. During the period leading up to the bankruptcy, the Real Property had been allowed to deteriorate and was in deplorable condition, but the new owners now are in the process of making significant improvements[1]. Mr. Sanders was a residential tenant in one of the Debtor's apartments and was listed as a creditor because of a pending prepetition lawsuit in state court.

On June 9, 2005, Mr. Sanders filed the Claim, which has two components: a personal injury claim[2] and a breach of contract claim, both arising out of an alleged robbery that occurred on or about January 24, 2004 in an elevator at 250 Lott Avenue

---

[1] The Noble Drew apartments lacked adequate security and were in need of maintenance, repairs and capital improvements. At a hearing held on August 15, 2007, counsel for the Creditors' Committee reported on the record that the new owner has fulfilled its commitment to invest in the Real Property and that living conditions have improved dramatically. This bankruptcy case is an example of the good that can result when parties work together with the goal of developing high quality affordable housing.

[2] The Debtor does not object to the personal injury component of the Claim. Mr. Sanders, if he so chooses, may pursue that aspect of the claim in state court under a stipulation granting relief from the automatic stay or at the conclusion of the Debtor's bankruptcy case.

2

(the "Robbery"). In support of the Claim, Mr. Sanders attached a New York City police report detailing certain facts relating to the Robbery and a copy of a "Constructive Notice of Waiver of Tort With Implied Contract," dated March 9, 2004 (the "Notice") and a "Constructive Notice of Concurrence With Default and Amended Waiver With Implied Contract Upon Default," dated April 22, 2004 (the "Default Notice"), both signed by Mr. Sanders but not by the Debtor. The Notice asserts, among other things, that an implied contract was established whereby the Debtor, because of its failure to provide adequate security for its residents, must pay $5,000 to Mr. Sanders and compensate him for all expenses occurred in connection with the Robbery. The Default Notice asserts, among other things, that because the Debtor did not comply with the terms and conditions of the Notice, it is in default and is liable for damages of $10,000 payable to Mr. Sanders immediately. In a December 2, 2005 letter, Mr. Sanders stated that if the Debtor did not pay him $10,000 immediately, it would be liable for $1,000 per day for each day until the amount was paid.

      Mr. Sanders is a pro se litigant who has been given ample opportunity to have the merits of his Claim heard by this Court. After learning at a status conference on October 5, 2006 that the parties had been unable to resolve the Claim, the Court scheduled an evidentiary hearing for January 9, 2007, which was adjourned on consent of the parties to February 6, 2007. In the meantime, the parties exchanged document requests. The Debtor affirms that it delivered all documents responsive to Mr. Sanders' request but that Mr. Sanders has never responded to its document request. The Debtor also served Mr. Sanders with a notice of deposition, dated October 20, 2006, but he did not appear.

3

One day prior to the scheduled evidentiary hearing, Mr. Sanders filed a petition for relief under chapter 13 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of New York, thereby staying further litigation on the Claim. Mr. Sanders' bankruptcy case was dismissed on April 3, 2007, which terminated the stay and the evidentiary hearing on the Claim was scheduled for May 24, 2007. The parties agreed to a further and final adjournment of that hearing to June 19, 2007.

By a letter dated June 13, 2007 that was filed on June 18, Mr. Sanders informed the Court that he would be unable to attend the June 19 hearing due to illness. Because of the many prior adjournments, the Court fixed a schedule for submitting written statements. The Court received timely submissions from both the Debtor and Mr. Sanders and makes its determination based on those papers.[3]

## Discussion

New York law recognizes two kinds of implied contracts, implied-in-fact and implied-in-law. Contracts implied-in-fact are inferred from the facts and circumstances of the case and are not formally or explicitly stated in words. *Wells v. Mann*, 45 N.Y. 327, 332 (1871). An implied-in-fact contract arises only when the facts and circumstances are such that the intent of the parties to make such a contract can be fairly inferred from consideration of their acts and conduct. *D'Angelo v. Bob Hastings Oldsmobile, Inc.*, 453 N.Y.2d 503, 89 A.D.2d 785 (4th Dep't 1982), *aff'd* 464 N.Y.S.2d 724, 59 N.Y.2d 773, 451 N.E.2d 471 (1983); *Carter v. Katz, Shandell, Katz & Erasmous*, 120 Misc.2d 1009, 465 N.Y.S.2d 991 (Sup. Ct. Queens Co. 1983).

---

[3] Mr. Sanders attached certain documents to his submission that had not been previously provided to the Debtor in response to its document request and are also hearsay. The Court therefore did not consider these documents when making its determination but notes that upon a brief review, the documents seemed to be irrelevant to this motion.

4

The Debtor lacked the requisite intent to enter into a contract with Mr. Sanders for an implied-in-fact contract to arise. The record is devoid of any evidence that the Debtor replied, consented or assented to a contract with Mr. Sanders either expressly or by implication through its actions. The "contract" that Mr. Sanders claims to have entered into is of his own creation, completely unilateral, and in all respects, self-serving. His documentation does not give rise to any legally binding obligation of the Debtor as an implied-in-fact contract.

Mr. Sanders has also failed to show that an implied-in-law contract exists. "Constructive agreements or quasi contracts are contracts implied-in-law, which impose or create by law a class of obligations 'without regard to the assent of the party bound, on the ground that they are dictated by reason and justice, and which are allowed to be enforced by an action *ex contractu*.'" *Hashemi v. Shack*, 609 F. Supp. 391, 395 (S.D.N.Y. 1984) (*quoting* 17 C.J.S. *Contract* §6, at 566-67 (1963)). "Contracts implied-in-law exist where one party, without any expression of assent from the other, obtains or retains possession of money or other property that actually belongs to the latter, by oppression, extortion, deceit or similar means." *Rosefsky by Koffman v. State*, 205 A.D.2d 120, 123, 617 N.Y.S.2d 969 (3d Dep't 1994). Specifically, a contract implied-in-law is not grounded in an implied promise to pay, but in the duty that arises, independent of any promise, to restore property to its rightful owner so as to prevent a party's unjust enrichment. *Id.*; *see also Parsa v. State of N.Y.*, 64 N.Y.2d 143, 148, 485 N.Y.S.2d 27, 474 N.E.2d 235 (1984); *Farash v. Sykes Datatroncis, Inc.*, 59 N.Y.2d 500, 504, 509, 465 N.Y.S.2d 917, 452 N.E.2d 1245 (1983); 1 Williston, *Contracts* §3A [3d ed.]; 1 Corbin, *Contracts* §19. "To sustain a claim for unjust enrichment, a plaintiff must show that the

5

defendant has at plaintiff's expense been enriched and unjustly so…In such a case the party who has conferred the benefit may assert a quantum meruit or quasi-contract claim against the recipient…" *S.S. Silberblatt, Inc. v. East Harlem Pilot-Block – Building 1 Housing Development Fund Co., Inc.*, 609 F.2d 28, 37 (2d Cir. 1979).

The Claim is based on the Robbery, a crime perpetrated by third parties unrelated to the Debtor. It is certainly possible that the Robbery may have resulted from inadequate security at the premises, but such negligence, even if proven, does not demonstrate the existence of any implied-in-law contract based on the theory that the Debtor obtained or retained any of Mr. Sanders' property. There also is no evidence in the record that the Debtor extorted and/or deceived Mr. Sanders or any other tenants. Finally, Mr. Sanders has provided no evidence to show that the Debtor was unjustly enriched as a result of the Robbery or on account of the apartment leased by Mr. Sanders at the Real Property. In fact, Mr. Sanders owes money to the landlord, and eviction proceedings have been commenced against Mr. Sanders for failure to pay rent.

## Conclusion

It is unfortunate that Mr. Sanders was a victim of the Robbery that occurred at the Real Property owned by the Debtor. Mr. Sanders may be able to demonstrate that the Robbery was the indirect result of an unsafe residential environment that prevailed at the Noble Drew apartments at the time of the Robbery, but the occurrence of the Robbery and the one-sided and self-serving documents prepared by Mr. Sanders are insufficient to establish any contractual claim against the Debtor. For the reasons stated above, no implied-in-law or implied-in-fact contract ever existed between the Debtor and Mr. Sanders. Mr. Sanders, therefore, has no right to assert any claims against the Debtor for

6

breach of contract and that portion of the Claim is hereby expunged. This ruling has no impact on the portion of the Claim that is based on tort law theories.

    IT IS SO ORDERED.

Dated: New York, New York
       August 16, 2007

                                      *s/ James M. Peck*
                                  HONORABLE JAMES M. PECK
                                  UNITED STATES BANKRUPTCY COURT